Yes sir. May it please the court. My name is Lucian Gilliam. I represent Robert Gibson in a lawsuit against Dassault Falcon Jet. We're here on an appeal of claims for race discrimination and retaliation under 81 Title VII of the Arkansas Civil Rights Act for a promotion in January of 2015 and a termination in January of 2017. I want to talk about the promotion first. Now the defendant argued that my client could not establish a qualification element in a prima facie case under McDonnell Douglas. The district court basically went off on an intent issue, not qualification. But in any event, the basis for saying that he was not qualified was that he had not been in the position that he was in for more than a year when he applied for the promotion to team lead. That's the legitimate non-discriminatory reason also, or it's the first of three legitimate non-discriminatory reasons they offered also. And under Davenport versus Riverview Gardens, you can't conflate those cases. I would also say that the record shows that their own documents say why somebody wasn't interviewed or promoted. And what they said here was that they had a box for not being qualified and they didn't check it for him. That's in appendix 161. Mr. Gillum, can I ask you a fact question? Yes, sir. Is it undisputed that the decision maker, Goncalves, if I pronounce it correctly, did not receive the plaintiff's team leader application from Human Resources? We were not. Pardon? I'm sorry, I thought you were done when I started. We were not able to establish evidence that it went from Human Resources that the application was sent from HR to Mr. Goncalves. No, sir. Well, in that case, how can a discriminatory motive be inferred by the decision makers if they didn't even have the plaintiff's application? Well, you know, the first thing I would say is that there was not direct evidence that it went from HR to Goncalves. But one is that as far as their knowledge goes, under Broadus versus OK Industries, and if I were suing Mr. Goncalves individually under 1981, I agree that knowledge would probably be pretty important. But under Broadus versus OK Industries, when you're suing the entity itself, all you have to do is establish corporate knowledge of activity or conduct. I don't think that we have to do that. The other thing is that we can prove cases through means other than direct evidence. You can use circumstantial evidence to prove cases. And, you know, the client adduced evidence that this policy under which he was purportedly disqualified was not applied to other people, and specifically not applied to other Caucasian people. You know, he adduced evidence of five different individuals who were either Caucasian or Asian, who had not filed the EEOC charges, who didn't get disqualified for this reason. And, you know, Dassault's reason is they say, well, you know, the COPS program, he got promoted, Mr. Gibson got promoted through the COPS program, and he did not get, and the COPS program doesn't let you get promoted twice in one year. And the problem with that is that requirement is something that's imported from company-wide policy that applies to all employees, all positions. If you look at appendix page, I think it's 423, 426, I'm sorry, there's a policy there that says that you can't even do two lateral positions in the same year, much less promotions. So my client has shown evidence that puts that view that his application wasn't forwarded into question, because it didn't stop it with other people. You know, the other thing is that my client has induced evidence, and I know that they say this gentleman was not a decision maker, but he induced evidence of a team lead who said you're not getting promoted because of this EEOC charge you did years ago in a situation back in 2011. And the issue there, you know, and my client testified that they have managers meetings about subordinates like him, and so his status was well known in the company. And it's well known by HR, because HR are the ones who would be dealing with things like EEOC charges. You know, another issue is that, you know, when he heard this explanation, you're not in the position for a full 12 months, and that's why you didn't get promoted. He knew that was wrong, because he knew about these other five individuals. So what did he do? He went and talked to the director, Mr. Simeon, and Mr. Simeon's version of it was not that you weren't in the position for 12 months. Mr. Simeon's version was that you're big, you're intimidating, and you've got bad character, which is quite something to say to people. And so it's a shifting legitimate nondiscriminatory reason. It's the sort of And whether or not this issue of not in the position 12 months, not having his application forward is actually reality, because he's getting a different story from Mr. Simeon. I wasn't sure from the briefs whether that comment by Simeon, big intimidating, was in a meeting where Gonsalves was also there. I cannot recall right now if Mr. Gonsalves was there. It was a session, an advice session to sort of counsel plaintiff on how to have a better chance next time. Well, no, I mean, that may be their version of events, but my client's version of events was that he went to Mr. Simeon to say, look, why am I not getting this promotion? But when did he go? Was it after Smith was announced as promoted? Right. Basically, you know, he saw that Smith had gotten this position. He knew that Smith was far less qualified than him by virtue of no supervisory experience, no team experience, no bachelor's degree, no master's degree, whereas my client had effectively been doing the team lead job for two or three years. And so he was wondering, why is this guy getting it? And I'm not. So he went next. And that's he's told, well, you aren't in the position for more than one year. And he knew that was wrong because he knew about these other five individuals who had not been stopped from promotion by virtue of the twice in one year rule or supposed twice in one year rule. So that's when he went to Mr. Simeon to ask, what's up? Why am I not getting this promotion? And that's when he's told you're big, you're intimidating, you got bad character. And so that's a shifting, legitimate, nondiscriminatory reason. And that's evidence of pretext as to their first reason, which is the 12 months. And we didn't forge your application because of that 12 month rule. You know, the other problem with, you know, this is not his testimony. He's not saying, I mean, he does deny that he was big, intimidating and a bad character. But their own analysis of Mr. Gibson is not that he's big and intimidating and bad character. If you look at their documents, if you look at their documents, their evaluations of him indicate that he's a model employee, that he is getting good evaluations on interpersonal skills, which is completely inconsistent with being intimidating and a bad character. Now, in that meeting with Mr. Simeon, my client, you know, braced the issue that that's got racial overtones, what you're saying. And it does. Mr. Simeon just kind of shrugs and says, well, you're not ready. But once again, which is yet another. I thought he apologized. That's yes, I believe he did. But that doesn't mean that you didn't say it just means that you realize you just said something inappropriate. And if you look at, you know, the appellees brief at page nine, they indicate that Mr. Simeon was getting these comments or, you know, supposedly from other people. Well, you know, we're in the South. One of the most common stereotypes that people recognize as being applied to African American men is that they're big, intimidating, scary, dangerous criminals, that sort of thing. Under Price Waterhouse, if people influence a decision through stereotypical type beliefs, comments and that sort of thing, that is evidence of intent and it's direct evidence of intent. And you can tell that it's stereotyping in this case, because aside from the conduct context of being the South and of being some of the most stereotypical beliefs you would have about African American males. You know, it's stereotyping because it's what's the what's the evidence Simeon was a decision maker? Well, he was the director of that area. That's what my client was going to him. Well, who made the decision? There ought to be evidence. I mean, you wouldn't have a summary judgment record and plaintiffs wouldn't have a chance and didn't establish who the decision makers were. Well, what they're let me put it this way. We don't have direct evidence that Simeon was the decision maker because, you know, like I said, their position has been that we didn't forward his his application to anybody. So it didn't get able to apply because he's not been in his current position for 10 months. But like I said, we are allowed to prove cases through circumstantial evidence. We do not have to prove cases through direct evidence. You know, I mean, just like they're not going to sit there and say, yeah, we're not promoting you because you're black. That's why we're not promoting you because of that EEOC charge. You really shouldn't have filed that. You know, the idea I'm sorry, but I don't know the record and I'm trying to learn it. There's a first of all, who was the decision maker? Then a different question is, did they have plaintiff's application when they made the decision? Well, who did you establish made the decision or attempt to establish? Pardon? Well, I inferred against Columbus, but the state of the record is that their position has been that my client was not promoted because he wasn't because people make decisions. Try to get to that. Pardon? Try to get to it is that basically they're saying that H.R. did not forward his application because he wasn't in the position for a full year. And so according to them, H.R. would be. According to whom? There's a decision maker. Who makes the promotion decision? Simeon in the hiring committee. Okay. Where in the record do I, where in the record is there, is there your evidence that Simeon was a decision maker? Well, I mean, okay, hold on a minute. I inferred from defendant's brief that it was Goncalves or maybe his supervisor. Is it Scroggs? I don't think it's Scroggs, but Mr. Simeon educated. Okay. Well, I mean, I would say Mr. Simeon and Mr. Goncalves, 293 and 305 for Mr. Simeon. That and 293, 294, 313, 314, 305 is where I would put that. I wanted to say something about the termination very briefly. You know, Mr. Resharmay is the best comparator there. According to Ms. Vandervoort's affidavit, which is exhibit C, they looked at seniority with the company and seniority in the position. Mr. Resharmay was a Caucasian who had not filed an EEOC charge. Mr. Resharmay was less senior with the company and less senior in the position. So Ms. Vandervoort's affidavit provides no basis at all for differentiating between Gibson and Resharmay and therefore fails as a legitimate Thank you, Your Honor. May it please the court. My name is Brian Vandervoort and I represent SO Falcon Jet in this case. Judge Baker got it right in her well-reasoned opinion and this court should affirm that decision. In short, Mr. Gibson says that Falcon Jet failed to promote him in 2015 and laid him off in 2017 either because of his race or because he filed an EEOC charge years ago, neither of which there's any evidence in the record to support. It's just his speculation as Judge Baker correctly found. A little brief factual background. DASO Falcon Jet is headquartered in Teterboro, New Jersey. Its facility in Little Rock is a completion facility where it completes the jet aircraft and finishes it out and delivers it to the customer. It the department in question that Mr. Gibson worked, the manufacturing engineering department, that department worked with computer programs and would create and deliver those programs to various production teams on how to assemble the jet. In 2015 there were two types of promotions and plaintiff tries to to conflate the two but they are distinct. One was a posted position which was a career opportunity program and this was the type of promotion at issue in this case and that was the type of promotion always used for team leader positions as the record indicates in the appendix. The other type of promotion is what was called a career path promotion and this distinction again is discussed in the appendix at 172-73 and in my brief at pages 8 and 9 and the career pathing promotion was not a posted position but it was a position a decision made by management based upon performance. Those career pathing promotions that Mr. Gillum and his client point to none of those were team leader decisions and none of those were posted decisions and so all of those promotions that he says well these white male employees are being promoted are not similar and and also your honor with regard to the failure to promote claim the evidence must show that a similarly situated white employee was promoted to establish a prima facie case. In this case Mr. Smith the employee that was promoted was black and so Mr. Gibson fails on his prima facie case and and Judge Loken you hit the nail on the head. The decision was made by HR in not forwarding the application to Mr. Goncalves and Mr. Simeon both French origin and they never had an opportunity to consider Mr. Gibson's application because it was not on their desk. HR had determined based upon their rule that you had to be in your current position for 12 months that he was not eligible. They also made the same decision for a while. Counsel where in the record do I do I would I get confirmation of that actually being a decision-making role? On appendix 174-175 the Falcon Jets EEOC position statement explains how the HR team examined the applications and were they qualified or were they not and there's a chart on appendix 175 explaining why four of these seven applicants were not qualified two of which were not qualified because they were not in their position for 12 months. Mr. Gibson and Mr. Frank a white male and so Mr. Goncalves and Mr. Simeon only become a decision with the applications they have in front of them. Just a second there's been some comment made about the box that said that you weren't qualified wasn't checked were the other persons who were not accepted because they failed to meet qualifications was that box checked on their applications or on their notices? Your honor I believe in the record that those those the box may not have checked but there was a written notation and not not in the position for 12 months on those applications and those can be in the found in the record give me just a moment your honor. So if we look at for example appendix 210 the position of Frank the application of Frank Alloy appendix 210 to 11 uh again he was not eligible because not in the position for 12 months. So the notices were identical in the in the personnel records? We would say that yes that the process was identical and the note the applications with regard to whether or not they were eligible was identical because uh HR made that decision to go through the applications and determine who to forward who was qualified who who met met the essential eligibility for those applications to be forwarded and only three of the seven were forwarded to Mr. Goncalves and Mr. Simeon. Thank you. Thank you your honor. With regard to the stray comment of Mr. Simeon saying that Mr. Gibson was big and intimidating again Judge Loken correctly noted this meeting occurred after the decision to promote Mr. Smith had already been made. This was a decision where Mr. Gibson came to meet with Mr. Goncalves and Mr. Simeon and that's noted in the appendix at 172 and also in my brief at page nine and this was more of a coaching session of how he could better himself to maybe in the future compete for a team leader position. It was not a shifting reason for why he was not selected this time. With regard to the failure to promote for retaliation after Nassar in 2013, the retaliation requires but for causation and counsel referenced a statement made by Dennis said that and we'll accept it as true as we must on this record that that the reason that you were not selected for team leader was because of your 2011 EEOC charge but if we look at the record and look at what Mr. Gibson actually said under oath we see that at appendix 101 lines 19 through 23 his actual testimony is part of the reason not the reason part of the reason why they won't promote you to team lead is because of what happened back in 2011 with Laurie Bradley not because you filed an EEOC charge that wasn't said it was because of what happened with Laurie Bradley and what happened with Laurie Bradley was he got into an argument with his supervisor in 2011. So that evidence is not direct evidence nor do we say it's circumstantial evidence to establish but for causation. Further Mr. Mitchell was not a supervisor he was a team leader or a co-worker as Judge Baker correctly found and Mr. Gibson ignores the fact that there's four years between his EEOC charge and this decision to promote and that length of time in between then he received one promotion in 2014 and he received four pay raises. He also competed in 2013 for the same position of team leader and in 2013 he again was not promoted but at that time his application was considered because he had been in the same job for 12 months and he would compete against Hank Chadwick who Falcon Jet did hire. For all those reasons there's not evidence of but for causation on the failure to promote. With regard to the reduction in force Mr. Gibson has to point to some criteria that race was a factor in his selection of being laid off and there is no such evidence. Mr. Gibson wants to point to other employees that were treated differently but if we look at the other employees who are team leader Mr. Gibson was laid off with another white employee both of which who are the least senior in the group and the other three who retain who were retained had more seniority as Ms. Vandervoort states in her affidavit at appendix 237. And Mr. Smith who was also a team leader Mr. Gibson talks about so-called demotions only being allowed for white employees that's just not the facts your honor. Mr. Smith was also allowed to be demoted he he asked to be demoted and employees who wanted to apply for lower level positions could do that and so Mr. Gibson acknowledges that Mr. Smith who received the promotion in 2015 also a black male was allowed to be demoted in 2017. There's no evidence that Mr. Gibson was selected because of his race or that he was not allowed to apply for any lower position because of his race and with regard to retaliation for the reduction in force again your honors NASA requires but for causation here we have a 2017 reduction in force that allegedly was caused by a 2011 EEOC charge and a 2015 EEOC charge and there is no evidence to connect the dots it's just Mr. Gibson's pure speculation as Judge Baker found we would ask that this court uphold and affirm Judge Baker's well-reasoned decision and I'd be happy to answer any questions you have. Very good thank you counsel. Mr. Gillum I'll give you I'll give you a chance to unmute. I apologize so anyway the court's summary judgment decision said that Gibson has testified that he did not know the criteria used to determine who would be laid off in the RIF. Gibson has speculated that seniority was the sole reason but he offers no evidence to support this. Well I didn't have to offer evidence to support it because Nan Vandervoort at 237-238 said plaintiff was laid off due to a lack of seniority under the RIF parameters. The criteria was applied by position to ensure a balanced skill set. As a senior manufacturing engineer he had a low seniority in relation to other senior manufacturing engineers so but second he was told this by the director so it was an admission he did offer evidence but in any event what the court then ignores is that Mr. Gibson provided testimony that a less senior Caucasian senior manufacturing engineer who had not filed an EEOC charge was not terminated. He was less senior with the company. He was less senior in his position as a senior manufacturing engineer. My client had been in it since January of 2015. That individual had been in it for only a year so my client did have greater seniority and what that means is that Vandervoort's affidavit no longer explains the difference in treatment between my client and Mr. Acharma who was allowed to remain. When it fails to do that it fails to offer a legitimate non-discriminatory reason that that rebuts the prima facie case and the court ignored the evidence that we did make out a prima facie case and that's all I have to say. Thank you. Thank you counsel. Case has been thoroughly briefed and argument has been helpful. We will take it under advisement.